**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MARY FRANCES BLACKARD;
ERVIN BOOTH; LYNN BOOTH;
MILDRED ELAINE BOOTH; BRYAN
BROOME and IRIS DEZILE BROOME;
LIGHTHOUSE RESCUE MISSION, INC.;
JASON LEE SHOWERS; EDGAR SMITH;
KENNETH THRONSON; and ALKEN
WATTS**                                                                    **PLAINTIFFS**

**V.**                                                  **CIVIL ACTION NO. 2:12-cv-175-KS-MTP**

**HERCULES, INC.; and ASHLAND, INC.**                                      **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the Defendant Ashland, Inc.'s Motion for

Summary Judgment [291]; Ashland and Defendant Hercules, Inc.'s Motion for Partial

Summary Judgment [293]; and the Plaintiffs' Motion to Exclude and Limit Certain

Opinions of Glenn Millner, Ph.D. ("Motion to Exclude") [302].  Having considered the

submissions of the parties, the record, and the applicable law, the Court finds that:

    1)    Plaintiffs' Motion to Exclude [302] should be granted in part and denied in

        part;

    2)    Ashland's Motion for Summary Judgment [291] should be granted; and

    3)    Hercules and Ashland's Motion for Partial Summary Judgment [293]

        should be granted in part and held in abeyance in part.[1]

---

[1] Several other motions are pending before the Court, including the Plaintiffs'
Motion to Exclude the Testimony of Dana Hebert [289]; Hercules and Ashland's Motion
to Exclude Testimony of Michael R. Corn [297]; and Hercules and Ashland's Motion to
Exclude Testimony of Joe Parker [308].  *Daubert* hearings pertaining to the testimony of
Dana Hebert and Michael R. Corn are scheduled in this case.  The Court cannot
address certain of the relief requested by the Defendants in their Motion for Partial

## RELEVANT BACKGROUND

The above-captioned Plaintiffs own certain parcels of land located in the City of Hattiesburg, Forrest County, Mississippi.  Hercules operated a chemical production facility (the "Facility," "Plant," or "Site") in Hattiesburg from 1923 until approximately 2009.  Ashland purchased Hercules in 2008.

On October 2, 2012, Plaintiffs filed suit against Hercules and Ashland in this Court.  (*See* Compl. [1].)  Subject matter jurisdiction is asserted on the basis of diversity of citizenship under Title 28 U.S.C. § 1332.  Plaintiffs allege, *inter alia*, that the Defendants improperly disposed of hazardous substances at the Facility; that the hazardous substances contaminated the soil and groundwater underneath the Facility; and, that the substances migrated through the environment and damaged their properties.  The Complaint asserts the following state law causes of action:  negligence; gross negligence; negligence *per se*; private nuisance; and trespass.  Plaintiffs subsequently filed their First Amended Complaint [21], adding a cost recovery claim under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a).

Plaintiffs move to exclude and limit certain opinions of Glenn Millner, Ph.D. pursuant to Federal Rules of Evidence 403, 702, and 703, and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  (*See* Pls.' Mot. to Exclude [302].)

---

Summary Judgment [293] until rulings have been made on the requests for exclusion of Ms. Hebert and Mr. Corn.  Ms. Hebert and Mr. Corn's opinions also weigh upon the admissibility of certain of Joe Parker's opinions.  Thus, a ruling on the Motion to Exclude Testimony of Joe Parker [308] will likewise be made at a later time.

Ashland seeks summary judgment on the grounds that it never owned or operated the Site, and there is no evidence that it caused the alleged contamination of the Plaintiffs' properties.  (*See* Ashland's Mot. for SJ [291].)  In addition, Hercules and Ashland jointly seek summary judgment on all of the Plaintiffs' claims except those of Bryan Broome and Iris Broome.  (*See* Defs.' Mot. for Part. SJ [293].)

## LEGAL STANDARDS

### *Summary Judgment*

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v.*

*Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding

whether a genuine fact issue exists, "the court must view the facts and the inferences to

be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club,*

*Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation,

improbable inferences, unsubstantiated assertions, and legalistic argumentation do not

adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v.*

*Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary Judgment is

mandatory "'against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d

759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

<u>*Admissibility of Expert Testimony*</u>

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A trial judge has a "gatekeeping obligation" under Rule 702 to

ensure that all expert testimony is both reliable and relevant.  *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (citing

-4-

*Daubert*, 509 U.S. at 589).  Rule 702's "relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'"  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).  In order to be reliable under Rule 702, the expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief."  *Id.* (citations omitted).

   *Daubert* set forth several factors bearing on the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique can be tested, whether the theory or technique has been published or subjected to peer review, and the general acceptance of the theory or method in the applicable community.  509 U.S. at 593-94.  The Supreme Court later recognized that *Daubert*'s factors "may or may not be pertinent in assessing reliability," since the specific issue, the subject of the expert's testimony, and the expert's area of expertise will vary from case to case.  *Kumho Tire Co.*, 526 U.S. at 150 (citation omitted).  Nonetheless, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony."  *Id.* at 152.

   The court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*  However, the judge's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). "'The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.'" *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Although the court's focus should be on the expert's principles and methodology, as opposed to the conclusions they generate, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

## DISCUSSION

### I.   Plaintiffs' Motion to Exclude [302]

Glenn Millner, Ph.D. is a toxicologist designated by Ashland and Hercules to provide expert testimony in the fields of toxicology and risk assessment.[2] Dr. Millner has a Ph.D. in Interdisciplinary Toxicology and is an assistant professor at the University of Arkansas for Medical Services. Dr. Millner has other credentials, but those matters need not be detailed here since there is no challenge as to Dr. Millner's qualifications to provide expert testimony. The majority of Dr. Millner's opinions concern whether there is a risk to the Plaintiffs' health based on environmental contamination

---

[2] Dr. Millner's Expert Report [306-1] defines toxicology as "the study of the adverse effects of chemical and other agents such as radiation on biological systems." (Millner Rep. [306-1] at p. 6.) "Risk assessment is a study of the levels of a chemical or chemicals in the air, water, or soil in order to determine the potential for people to be exposed to these chemicals and the potential for these exposures to do harm to people." (Millner Rep. [306-1] at p. 6.)

and whether remediation (the removal of pollution or contaminants from the environment) is required as a result.  For instance, Dr. Millner opines:

> Since there is no recognized scientific basis to conclude that alleged contamination is jeopardizing health or welfare of plaintiffs, there is no scientific basis to conclude that remediation is appropriate or necessary.
>
> . . . .
>
> [P]laintiffs are not at any incremental increased risk of adverse health effects from benzene, carbon tetrachloride, or the other chemicals compared to the general population.

(Millner Rep. [306-1] at p. 3, 4.)  Some of Dr. Millner's opinions touch upon the expected testimony of Plaintiffs' expert witness Michael R. Corn.  Mr. Corn is expected to testify that chemicals from the Facility have reached each of the Plaintiffs' properties, and that the costs of remediating the properties range from $40.2 million to $56.3 million.  (Corn Rep. [297-1] at p. 3.)  Dr. Millner is of the opinion that the method utilized by Mr. Corn for detecting chemicals on the Plaintiffs' properties "does not meet data quality and usability standards for use in risk assessments and cannot be relied on to make remedial decisions."  (Millner Rep. [306-1] at p. 4.)

The Plaintiffs' Motion to Exclude [302] is primarily grounded on relevance arguments.  Plaintiffs argue that Dr. Millner's opinions regarding remediation and health risks are irrelevant to the issues of liability and their request for injunctive relief. Plaintiffs contend Dr. Millner's remediation opinions are based solely on human health concerns, which do not weigh on their ability to obtain an injunction enjoining the Defendants from further polluting the subject properties or impact the liability issue of whether their properties have been invaded and damaged.  Plaintiffs nonetheless assert

that Dr. Millner's opinions may be relevant to one aspect of their nuisance damages: the loss of the use and enjoyment of their properties.

In response, Defendants agree that Dr. Millner's expected testimony regarding human health risks and remediation "are not relevant to liability, *i.e.* whether a trespass has occurred." (Defs.' Mem. Brief in Opp. to Mot. to Exclude [332] at p. 3.)  However, Defendants note that Dr. Millner's opinions concerning tentatively identified compounds and exposure pathways are relevant to liability.[3]  Defendants further contend Dr. Millner's opinions are relevant to the Plaintiffs' request for a mandatory injunction, requiring the Defendants to remediate the Site and the Plaintiffs' properties. "Defendants here should be allowed to oppose the Plaintiffs' demand for a mandatory injunction by presenting evidence that the levels of constituents allegedly on their properties do not pose a risk to human health and do not warrant the remediation recommended by Mr. Corn." (Defs.' Mem. Brief in Opp. to Mot. to Exclude [332] at p. 8.)  Defendants also posit that both the Court and jury must hear from Dr. Millner since the jury will be required to make findings of fact the Court deems pertinent to its ruling on the requested injunction.

---

[3] Mr. Corn, Plaintiffs' expert witness, partially relies on tentatively identified compound data for his contamination opinions.  "Tentatively Identified Compounds (TICs) are another tool used by [the] EPA to characterize hazardous sites."  United States Environmental Protection Agency ("EPA") Region III Quality Assurance Team, *Tentatively Identified Compounds  What are they and why are they important?* (Feb. 17, 2006), *available at* http://www.epa.gov/region03/esc/qa/pdf/tics.pdf.  The identification of TICs "is not considered 'absolute' or 'confirmed' until a known standard for the suspect compound can be analyzed on the same instrument which made the tentative identification."  *Id.*

The Court entered its Memorandum Opinion and Order [327] on the Defendants' Motion to Strike Expert Witness Testimony [199] prior to the filing of the Plaintiffs' rebuttal.  In that order, the Court held that Dr. Jonas Kalnas and Dr. Tresa Roebuck-Spencer, two of the Plaintiffs' experts, "are precluded from offering expert testimony at trial regarding the Plaintiffs' alleged emotional distress, mental anguish, negative emotional reactions, or fears of future illness purportedly resulting from the environmental contamination of their properties."  (Mem. Op. & Order [327] at pp. 10-11.)  The Court found that these opinions were irrelevant in the absence of any legally cognizable claim for emotional distress damages.  Plaintiffs reference this ruling in support of their rebuttal argument that Dr. Millner's expected testimony is irrelevant to *any* issue remaining for the jury's consideration, including their claims for the loss of the use and enjoyment of their properties.  Plaintiffs also now appear to concede that Dr. Millner's opinions may be pertinent to their request for injunctive relief.  "To the extent his opinions have some relevance to the question of injunctive relief, the Court is free to consider Dr. Millner's report if and when it addresses that issue."  (Pls.' Reply Mem. in Supp. of Mot. to Exclude [367] at p. 5.)

The Court finds that Dr. Millner should be precluded from offering opinions in the presence of the jury at trial to the effect that there are no risks to the Plaintiffs' health based on the alleged contamination of their properties and that remediation is unnecessary or inappropriate in the absence of such risks.  It appears that the Plaintiffs and Defendants are in agreement that these opinions do not bear upon the issue of liability.  Moreover, Plaintiffs are not seeking damages for personal injuries in this action.  "Plaintiffs do not allege that these contaminants have caused them any present

physical injury, nor do they assert any claim for increased risk of illness or future

physical injury. . . .  Plaintiffs in this case seek vindication of rights to property, not

human health . . . ."  (Pls.' Mem. in Supp. of Mot. to Exclude the Testimony of Dana

Hebert [290] at p. 2.)  As a result, Dr. Millner's opinions regarding human health risks

cannot "be properly applied to the facts in issue" for the jury's consideration.  *Johnson*,

685 F.3d at 459.  These same opinions may be relevant to the Court's consideration of

whether the Plaintiffs are entitled to a mandatory permanent injunction, requiring the

Defendants to remediate the Plaintiffs' properties.  *See Phillips v. Davis Timber Co.*, 468

So. 2d 72, 79 (Miss. 1985) (affirming the chancellor's refusal to require the defendant to

restore a lake to its previous unpolluted state where the evidence showed sub-lethal

levels of contamination).[4]  However, the issue of injunctive relief will be taken up after

the jury addresses liability,[5] and there is a significant likelihood that Dr. Millner's

expected testimony regarding remediation based on health risks would confuse the

property invasion and damage issues the jury may appropriately consider.  *See* Fed. R.

Evid. 403.  The Court also determines that Defendants, as the proponents of Dr.

_____

[4] The Court applies the substantive law of Mississippi in this diversity action.  *See Lloyd v John Deere Co.*, 922 F.2d 1192, 1194 (5th Cir. 1991).  The Court finds persuasive numerous authorities providing that the grant of a permanent injunction is a substantive matter necessitating the application of state law.  *See, e.g.*, *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988); *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, No. RDB-11-1864, 2013 WL 2903285, at *4 (D. Md. June 13, 2013); *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 706 (E.D. Va. 2012); *MedX, Inc. v. Ranger*, 788 F. Supp. 288, 292 (E.D. La. 1992); 19 Charles Alan Wright et al., *Federal Practice and Procedure* § 4513 (2d ed.).

[5] *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550, 110 S. Ct. 1331, 108 L. Ed. 2d 504 (1990) (providing that when legal and equitable claims share common facts, the legal claims should ordinarily be tried first) (citations omitted).

Millner's testimony, have not adequately demonstrated the relevance of his "exposure pathways" opinions to warrant their submission to the jury at trial.  Moreover, the relevance of these opinions is not obvious to the Court.

The preceding determinations do not reach all of Dr. Millner's opinions and conclusions.  Specifically, Dr. Millner may testify as to the following matters:

> Mr. Corn's conclusions regarding chemical trespass on plaintiffs' properties include tentatively identified compounds (TICs), which by definition are not reliably identifiable or quantifiable.   Mr. Corn's conclusions regarding chemical trespass also rely on detections of a large number of chemicals that have not been detected on the Hercules site.

(Millner Rep. [306-1] at p. 4.)  The reliability of TIC data is central to the claims of Jason Showers, Mildred Booth, and Lynn Booth since only TICs, as opposed to target chemicals such as chloroform and benzene, have been found on their respective properties.  (*See* Doc. No. [307-4].)  In addition, all of the Plaintiffs must prove that chemicals from the Hercules Facility have reached their properties in order to obtain any relief in this action.  That the above-quoted opinions can be made without reference to health risks also weighs in favor of their admission.[6]

In sum, Dr. Millner's opinions concerning risks to the Plaintiffs' health, remediation of the Plaintiffs' properties, and exposure pathways will be excluded from the jury at trial.  Dr. Millner will be permitted to testify regarding Mr. Corn's use of TIC data and detection of chemicals not found at the Plant.

## II.     Ashland's Motion for Summary Judgment [291]

---

[6] Even these opinions may be later deemed inadmissible on the basis of relevancy depending on the outcome of Plaintiffs' Motion to Exclude the Testimony of Dana Hebert [289] and Hercules and Ashland's Motion to Exclude Testimony of Michael R. Corn [297].

Ashland makes the following contentions of fact in support of its request for summary judgment on Plaintiffs' negligence, private nuisance, and trespass claims.[7] Hercules is and has always been the owner of the Facility since it began operating in 1923.  On November 13, 2008, Ashland acquired all of Hercules' outstanding stock. Hercules' ownership of the Facility was unaffected by this stock acquisition.  Hercules operated the Facility from 1923 until it ceased operations in November, 2009.  Hercules continues to oversee the Facility.  Ashland has never owned or operated the Facility. Plaintiffs lack evidence showing that any act or omission by Ashland after November 13, 2008, resulted in the contamination of their properties.

Plaintiffs contend Ashland has had full control over environmental remediation decisions at the Facility since it acquired Hercules.  Plaintiffs allege Ashland knew of contamination at the Facility prior to its acquisition of Hercules, has exercised complete control over environmental decisions and clean-up since the acquisition, and has done nothing to stop the continuing flow of contamination from the Facility onto the Plaintiffs' properties.  Plaintiffs thus argue that numerous facts exist to create a jury question as to whether Ashland "acted negligently, wantonly and recklessly by utterly failing to address known environmental conditions that have harmed, and continue to harm, Plaintiffs' property interests."  (Pls.' Resp. to Mot. for SJ [331] at p. 15.)

A.      **Private Nuisance and Trespass**

The Mississippi Supreme Court has recently outlined the law of private nuisance:

A private nuisance is a nontrespassory invasion of another's interest in the

---

[7] Plaintiffs' CERCLA claim is addressed in Hercules and Ashland's Motion for Partial Summary Judgment [293].

> use and enjoyment of his property.  One landowner may not use his land so as to unreasonably annoy, inconvenience, or harm others....  One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Christmas v. Exxon Mobil Corp.*, 138 So. 3d 123, 126 (¶ 7) (Miss. 2014) (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 662 (Miss. 1995)).  A trespass to land occurs "when a person intentionally invades the land of another without a license or other right."  *Reeves v. Meridian S. Ry., LLC*, 61 So. 3d 964, 968 (¶ 19) (Miss. Ct. App. 2011) (citing *Thomas v. Harrah's Vicksburg Corp.*, 734 So. 2d 312, 316 (¶ 10) (Miss. Ct. App. 1999)).  The unauthorized placement of an object on another's land may be sufficient to give rise to trespass liability.  *See id.*  The Fifth Circuit has examined Mississippi law in an action involving the contamination of property with sulfuric acid and found that the label attached to a plaintiff's claim is not of critical importance.  *City of Jackson, Miss. v. Filtrol Corp.*, 624 F.2d 1384, 1390 (5th Cir. 1980).  Thus, allegations of "nuisance, trespass, and strict liability" were deemed not to be separate theories of liability on the facts before the Fifth Circuit.  *Id.* at 1389.  "Mississippi clearly allows a plaintiff to recover damages to land caused by a physical invasion of the plaintiff's land by an agency put in motion by the defendant, even if the defendant has not been negligent."  *Id.* at 1390.  Stated differently, a plaintiff in Mississippi may obtain recovery for the physical invasion of his or her land "upon a simple showing that the defendant was responsible for the physical invasion."  *Id.* at 1389.  The Mississippi Supreme Court has favorably cited *Filtrol* on several occasions.  *See Donald v. Amoco Prod. Co.*, 735

So. 2d 161, 172 (¶¶ 33-34) (Miss. 1999); *Shutes v. Platte Chem. Co.*, 564 So. 2d 1382, 1385 (Miss. 1990); *Phillips*, 468 So. 2d at 78.

Plaintiffs present no proof that Ashland was involved in the operation of the Facility while it was being utilized to produce chemicals or that Ashland improperly disposed of chemicals at the Facility resulting in the contamination that is purportedly affecting the Plaintiffs' properties.  Plaintiffs' theory of liability against Ashland is that it has failed to control the spread of pollution from the Site that originated with Hercules' production, storage, and disposal of chemicals.  Under these circumstances, the Court finds that no reasonable jury would consider Ashland (as opposed to Hercules) to have used the Facility "so as to unreasonably annoy, inconvenience, or harm" the Plaintiffs;[8] to have "intentionally invade[d] the" Plaintiffs' lands;[9] or to have "put in motion" an agency physically invading the subject properties.  *Filtrol Corp.*, 624 F.2d at 1390.  As will be discussed below, Plaintiffs' failure "to effectively capture, control, remediate, or stop the continuing flow of contamination" allegations against Ashland *may* sound in negligence.  (Pls.' Resp. to Mot. for SJ [331] at p. 17.)  However, Plaintiffs cite no authority supporting their ability to recover from Ashland on a nuisance or trespass theory based solely on this Defendant's alleged failure to correct the wrongs of Hercules.  Ashland will be granted summary judgment on these claims as a result.

**B.**     **Negligence**

---

[8] *Christmas*, 138 So. 3d at 126 (¶ 7).

[9] *Reeves*, 61 So. 3d at 968 (¶ 19).

"The four elements of negligence include (1) duty, (2) breach of duty, (3) causation, and (4) damages." *Fisher v. Deer*, 942 So. 2d 217, 219 (¶ 6) (Miss. Ct. App. 2006) (citing *Couch v. City of D'Iberville*, 656 So. 2d 146, 150 (Miss. 1995)). The Court construes Ashland's Motion for Summary Judgment [291] as challenging only Plaintiffs' ability to meet the duty and causation elements of their negligence claim. The existence of a legal duty is an issue of law, while causation generally is a matter for the jury's consideration. *Donald*, 735 So. 2d at 174 (¶ 43).

The outcome of summary judgment on the Plaintiffs' negligence allegations largely turns on two Mississippi appellate decisions cited by the parties. *See Long v. Magnolia Hotel Co.*, 227 Miss. 625, 86 So. 2d 493 (Miss. 1956); *Pecanty v. Miss. S. Bank*, 49 So. 3d 114 (Miss. Ct. App. 2010). In *Long*, the Mississippi Supreme Court reversed the trial court's grant of a directed verdict in favor of the defendants in a suit brought for the negligent destruction of property. 86 So. 2d at 495. The plaintiff, Amelia Long, owned a restaurant that adjoined a hotel building owned by the Magnolia Hotel Company ("Magnolia") in the City of Vicksburg. *Id.* at 494. On December 5, 1953, a tornado swept through Vicksburg, causing damage to numerous properties including the restaurant and hotel. *Id.* On December 7, Magnolia retained M. T. Reed Construction Company ("Reed") to make repairs to the hotel. *Id.* at 495. On December 10, while Reed was in the process of making repairs, numerous bricks and loose materials fell from the east wall of the hotel onto the roof of the restaurant. *Id.* The falling debris resulted in Long's restaurant sustaining significant damage beyond that damage already caused by the tornado. *Id.* The Mississippi Supreme Court supplied the following

-15-

salient points in finding that the jury should have been allowed to determine whether

Magnolia and Reed were negligent:

> A landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises which may and does inflict injury on an adjoining owner is liable for the damage so caused. . . . A landowner who maintains or permits the existence of something potentially dangerous to adjoining property must take precautions that no injury therefrom befalls his neighbor. Whether or not he is guilty of negligence is a question for the jury. . . . It is true that the damage to the hotel building had been caused by the tornado, and that it was necessary that prompt action be taken to eliminate the danger that existed as a result of the unsafe condition of the outer wall of the hotel building. But the fact that the dangerous condition had been created as a result of a tornado, and that quick action was required to eliminate the danger, did not relieve the hotel company and its contractor from the duty to exercise due care not to injury unnecessarily the appellant's property.

*Id.* at 496 (internal citations omitted).

*Pecanty* also involved two adjoining properties in Vicksburg. Jane Pecanty and

her husband owned a home located uphill from an adjacent piece of land owned by

VFW Post 1034, Inc. ("VFW"). *Pecanty*, 49 So. 3d at 115 (¶ 2). In or about 2000, the

Pecantys started experiencing erosion on their property after VFW began a landscaping

project involving excavation of the hillside. *Id.* VFW subsequently erected a retaining

wall to alleviate the damage, but the Pecantys continued to experience erosion on their

land. *Id.* at 115 (¶ 4). In 2001, Mississippi Southern Bank, as merged with State Bank

and Trust Company (the "Banks") acquired VFW's property. *Id.* at 115 (¶ 5). The

Banks conveyed the property to Jimmy and Sheila Tarver (the "Tarvers") in 2005. *Id.*

Subsequent to her husband's death in 2006, Pecanty filed suit against VFW and the

Banks in chancery court seeking an injunction and damages. *Id.* at 116 (¶¶ 5-6). The

Tarvers were joined as Defendants in December of 2007. *Id.* at 116 (¶ 8). Summary

-16-

judgment was entered in favor of the Tarvers and the Banks due to the running of the

three-year statute of limitations set forth in section 15-1-49 of the Mississippi Code.  *Id.*

at 116 (¶¶ 7-8).  Conversely, the chancery court entered a monetary judgment in favor

of Pecanty and against VFW because it failed to do anything to rectify the damages

caused by the initial excavation.  *Id.* at 116-17 (¶ 11).  Pecanty then appealed the

dismissal of the Tarvers and the Banks.  *Id.* at 117 (¶ 12).  The Mississippi Court of

Appeals largely steered clear of the statute of limitations issue and found no actionable

negligence attributable to the Tarvers or the Banks.

> In the case before us, the legal cause of harm to Pecanty was the removal
> of lateral support to her property.  Neither the Banks nor the Tarvers removed
> the lateral support, nor did they cause the same to be removed.  A
> dysfunctional retaining wall was built in 2001, which neither the Banks nor the
> Tarvers constructed or caused to be constructed.  Since no action on either
> of their parts was the legal cause of the harm caused to Pecanty's property,
> neither can be held strictly liable.  Nor are the Banks and the Tarvers liable
> for any negligent-failure to act.  While the weight of authority suggests that
> they may have owed a reasonable duty to *maintain* a properly-built retaining
> wall, we find no persuasive authority which instructs that they bore the
> additional burden of putting right what was VFW's wrong solely on the basis
> that they were subsequent title holders.  Thus, we find no actionable
> negligence on the part of the Banks or the Tarvers.

*Id.* at 121-22 (¶ 27).  The court took notice of *Long,* but distinguished that case because

the Tarvers and the Banks had no involvement with the excavation by VFW resulting in

the removal of Pecanty's lateral support.  *Id.* at 120-21 (¶¶ 24-25).  The Tarvers and the

Banks were also unaware of any property damage issues until Pecanty filed her

complaint.  *Id.*

Neither *Long* nor *Pecanty* squares firmly with the contours of this case, but

*Pecanty* is the more analogous opinion.  Unlike Magnolia and Reed in *Long*, Ashland

does not own the Site and the Court has not been apprised of the existence of any

services contract between the owner (Hercules) and Ashland for Ashland's removal of contamination from the Site.  However, there are facts in the summary judgment record creating a jury issue as to whether Ashland has possessed and controlled the Site since its acquisition of Hercules in 2008.[10]  Thus, Ashland can be fairly compared to the Tarvers and the Banks in *Pecanty*, purchasers of land affected by or encompassing a hazardous condition caused by a prior owner.  Also like *Pecanty*, the Plaintiffs charge the owner of the Site, Hercules, with creating a dangerous condition affecting their properties.  Plaintiffs further contend Hercules has failed to take measures to keep the contamination from escaping the Site.  Consequently, Ashland, similar to the Tarvers and the Banks, cannot be charged with "a reasonable duty to *maintain* a properly-built" containment system.  *Pecanty*, 49 So. 3d at 122 (¶ 27).  This action differs from *Pecanty* in that there is evidence showing Ashland knew of contamination at the Site prior to its

------

[10] For instance: **1)** At some point in time, a sign was displayed on the Facility gate indicating that "Ashland reserves the right to search any vehicle, equipment or person that is brought into the plant." (*See* Doc. No. [336-2].)  **2)** Ashland has employed Tim Hassett as a remediation project manager for the Hattiesburg Site since November of 2008.  Mr. Hassett does not report to any current officer, employee, or director of Hercules.  Ashland employees, officers, and directors authorize environmental expenditures for the Site. (*See* Hassett Dep. [333-3] 6:3-8, 19:10-13, 21:15-17, 28:4-29:17, 31:3-14, 33:11-18.)  **3)** Ashland contracts with ARCADIS, a consulting firm, for assistance with compliance with the EPA's RCRA Section 3013(a) Order (the "EPA Order") [331-1], requiring monitoring, testing, analysis, and reporting as to hazardous materials at the Site.  ARCADIS bills Ashland for all of its work at the Site. (*See* Ellis Dep. [377-1] 21:3-23:20, 54:7-20.)  John Ellis is the ARCADIS project manager for work activities at the Hattiesburg Site. (Ellis Dep. [377-1] 23:3-7.)  **4)** In January of 2009, Ashland contracted with TestAmerica Laboratories, Inc. for environmental testing at the Site. (*See* Services Agreement [342-3]; Analytical Report [343-1].)  **5)** In March of 2010, Ashland contracted with Pine Belt Oil for the sale of certain Plant materials. (*See* Conveyance and Indemnity Agreement for Used Equipment/Material [336-1].)

-18-

acquisition of Hercules.[11]  However, it appears that Ashland believed "the contamination was contained onsite" due to the existence of an underlying layer of clay.  (Allen Dep. [333-1] 42:12-16.)  Furthermore, the Tarvers and the Banks' lack of knowledge of any problem existing "with Pecanty's property" was not a dispositive consideration. *Pecanty*, 49 So. 3d at 121 (¶ 25).  Those defendants' lack of involvement in the creation of the dangerous condition affecting Pecanty's property was the controlling determination.  *See id.* at 121-22 (¶ 27).

The portion of *Long* holding that Magnolia and Reed owed Long a duty to avoid causing injury to her property while repairing the damaged hotel wall is plainly inapplicable in this action.  *See* 86 So. 2d at 496.  Plaintiffs in this case contend Ashland is negligent for failing to act, not for "negligently or unskillfully perform[ing] an act" during the course of remedying Hercules' environmental contamination.  *Id.* (citation omitted). On the other hand, the Mississippi Supreme Court's finding that a landowner has a duty to prevent injury to adjoining properties from a known hazard even if the dangerous condition was not caused by the landowner is analogous if one equates Ashland's potential control over the Site with title ownership.  *See id.*  Magnolia, similar to Ashland, was not responsible for initially impairing the hotel wall that later collapsed and

---

[11] The deposition testimony of Gary Allen, Ashland's Rule 30(b)(6) witness, establishes that Ashland was aware of the following circumstances before it purchased Hercules:  (i) an unlined impounding basin ("IB") had been used to store wastewater since the 1940's; (ii) the IB was excavated into the groundwater table; (iii) known and suspected human carcinogens had been detected around the IB; (iv) the IB was on the eastern border of the Site near Providence Street, across from which lies a residential neighborhood; and (v) unlined and uncapped sludge pits had been utilized at the northwestern boundary of the Site for decades.  (*See* Allen Dep. [333-1] 18:8-19:14, 40:6-45:23, 48:4-9.)

damaged Long's property.  However, Long had no legal recourse with respect to the

original cause of the dangerous condition since it was a weather event and not a human

act or omission.  Here, Plaintiffs can assert and have asserted legal claims against

Hercules, the undisputed owner of the Site who caused the environmental

contamination at issue in this litigation.  As a result, Ashland cannot be considered "the

legal cause of the harm" to the Plaintiffs' properties and the Court finds "no actionable

negligence on the part of" Ashland.  *Pecanty*, 49 So. 3d at 122 (¶ 27).

The remaining authorities cited by Plaintiffs in support of their negligence claim

are unavailing.  *See City of Jackson v. Internal Engine Parts Group, Inc.*, 903 So. 2d 60

(Miss. 2005); Restatement (Second) of Torts § 366 (1965).  In *Internal Engine Parts

Group*, the Mississippi Supreme Court affirmed a damage award against the City of

Jackson where "its negligent failure to inspect and maintain" a drainage ditch created a

dangerous condition; i.e., an obstructed drainage ditch that caused or contributed to the

flooding of the plaintiff's property.  903 So. 2d at 62 (¶ 5), 64 (¶ 10), 67 (¶ 24).  Plaintiffs

here do not allege that Ashland's negligence created the environmental contamination

affecting their properties.  The Court has not identified any Mississippi Supreme Court

decision adopting section 366 of the Restatement (Second) of Torts.[12]  Furthermore,

there are persuasive authorities eschewing the application of this provision to impose

---

[12] "One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after, (a) the possessor knows or should know of the condition, and (b) he knows or should know that it exists without the consent of those affected by it, and (c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it."  Restatement (Second) of Torts § 366.

liability on an individual who purchases land encompassing or affected by a hazardous condition created by the prior owner.  *See Lee v. Takao Bldg. Dev. Co.*, 175 Ca. App. 3d 565, 568 (Cal. Ct. App. 1985); *Pecanty*, 49 So. 3d at 121 (¶ 26).

Plaintiffs present no controlling authority imposing a duty on a possessor or controller of land (Ashland) to remedy the prior acts or omissions of a current owner (Hercules) under a negligence theory of liability.  Accordingly, the parties' arguments regarding whether hazardous chemicals have migrated from the Site since 2008 are moot for purposes of this motion, and the Plaintiffs' negligence claims against Ashland will also be dismissed from this lawsuit.

## III.  Hercules and Ashland's Motion for Partial Summary Judgment [293]

### A.  CERCLA Claim

Defendants argue that Plaintiffs have not incurred any costs recoverable under CERCLA.  "Plaintiffs do not oppose Defendants' Motion for Partial Summary Judgment on the CERCLA claim."  (Pls.' Resp. in Opp. to Mot. for Part. SJ [350] at p. 2 n.2.) Accordingly, this portion of the motion will be granted as confessed.

### B.  Remediation and Restoration Costs

Defendants assert that Plaintiffs cannot recover the costs Michael R. Corn has estimated are necessary to monitor and remediate their properties because these costs exceed the alleged diminution in value of the properties caused by environmental contamination.   Plaintiffs' opposition does not address this request for dismissal.  The Court thus finds that Plaintiffs have abandoned any claim for remediation or restoration

costs.[13]  Even overlooking the Plaintiffs' failure to respond to this request for dismissal, a landowner in Mississippi may recover restoration costs "only if the cost of restoration is less than the diminution in value of the entire property."  *Patterson v. Holleman*, 917 So. 2d 125, 132 (¶ 20) (Miss. Ct. App. 2005) (citing *Harrison v. McMillan*, 828 So. 2d 756, 770 (¶ 43) (Miss. 2002)); *see also Waggener v. Leggett*, 246 Miss. 505, 150 So. 2d 529, 531 (Miss. 1963) (rejecting the plaintiff's request for restoration costs since they exceeded the diminution in value caused by the defendant's trespass).  Therefore, this portion of the motion is well taken and Plaintiff's compensatory damages, if any, are subject to the before and after rule: "the difference between the fair market value of the entire tract before the injury and the fair market value after the injury."  *Patterson*, 917 So. 2d at 132 (¶ 20).

## CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that the Plaintiffs' Motion to Exclude [302] is granted in part and denied in part.  The motion is granted to the extent the opinions of Defendants' expert, Glenn Millner, Ph.D., concerning risks to the Plaintiffs' health, remediation of the Plaintiffs' properties based on health risks, and exposure pathways will be excluded from the jury at trial.  The motion is denied to the extent Dr. Millner will

---

[13] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

be permitted to testify regarding Michael R. Corn's use of TIC data as a basis for contamination and the detection of chemicals on the Plaintiffs' properties not found at the Hercules Plant.

IT IS FURTHER ORDERED AND ADJUDGED that Ashland's Motion for Summary Judgment [291] is granted and Plaintiffs' state law claims against Ashland are dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that Hercules and Ashland's Motion for Partial Summary Judgment [293] is granted in part and held in abeyance in part.  Plaintiffs' claims against Ashland and Hercules under CERCLA are dismissed with prejudice.  Furthermore, Plaintiffs are precluded from recovering remediation and restoration costs as compensatory damages.  The remaining portions of this motion will be addressed in a subsequent order.

IT IS FURTHER ORDERED AND ADJUDGED that Ashland is dismissed with prejudice from this lawsuit.

SO ORDERED AND ADJUDGED this the 17th day of July, 2014.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE